IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>v.<br><br>MARVIN D. HERREN,<br><br>                Defendant. | Case No. 15-00018-01-CR-W-DGK |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

    **1.**    **The Parties.**    The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Tammy Dickinson, United States Attorney, and David Luna, Assistant United States Attorney, and the defendant, Marvin D. Herren ("the defendant"), represented by Carie Allen.

    The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

    **2.**    **Defendant's Guilty Plea.**    The defendant agrees to and hereby does plead guilty to Count One of the information charging him with a violation of 18 U.S.C. §§ 2423(b) & (e), that is, travel with intent to engage in illicit sexual conduct with a minor as well as Count Two of the information charging him with a violation of 18 U.S.C. §2422(b), that is, attempted use of interstate facility to

entice a minor to engage in illegal sexual activity. By entering into this plea agreement, the defendant admits that he knowingly committed these offenses, and is in fact guilty of these offenses.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which he is pleading guilty are as follows:

## COUNT ONE

Defendant **MARVIN D. HERREN ("HERREN")** admits the following:

On or about March 6, 2014 in the Western District of Missouri and elsewhere, HERREN traveled in interstate commerce, that is from the State of Kentucky to the State of Missouri, for the purpose of engaging in any illicit sexual conduct with another person, namely, at least one sexual act (as defined in Title 18, United States Code, Section 2246) that would include contact between the penis and the vulva, contact between the mouth and the penis, and contact between the mouth and the vulva, with a person under 18 years of age that would be in violation of Chapter 109A of Title 18, United States Code, had the sexual act occurred in the special maritime and territorial jurisdiction of the United States, and attempted to do so, all in violation of Title 18, United States Code, Sections 2423(b) & (e).

HERREN first contacted the victim "Jane Doe" through social media on about March 1, 2014. At the time Jane Doe (Doe) was 15 years old. After a few days of communicating with Doe by social media (and after being informed by Doe that she was 15 years old) HERREN began asking Doe questions of a sexual nature. HERREN asked Doe to send him nude photos of herself. Doe refused initially but eventually acquiesced. HERREN asked Doe if she wanted a photo of himself. When she told HERREN she did want a photo of him, HERREN sent her via instant message a photo of himself nude with an erect penis. Eventually HERREN asked Doe if she wanted to have sex with him.

On the morning of March 6, 2014 HERREN informed Doe by instant message that he was coming to see her in St. Joseph, Missouri. HERREN'S purpose in traveling to Missouri was to engage in illicit sexual conduct with Doe, who HERREN knew to be only 15 years of age. HERREN arranged to meet with Doe after school that day. Once school was over for the day, Doe and a friend walked to a Burger King near their high school to meet HERREN. HERREN arrived at the Burger King a short time later and met Doe and her friend. After talking for a short time HERREN drove both Doe and her friend back to the high school at which time Doe's friend left them. HERREN then parked near the high school and had Doe get into the back seat of his car with him. Once in the back seat HERREN inserted his penis into Doe's vagina. Doe and HERREN performed oral sex on each other and also masturbated each other. Once the sexual contact was over HERREN left Doe and returned to Kentucky. Doe did not see HERREN again. HERREN, however continued for a time to contact Doe by instant messaging. During that time HERREN sent Doe a text message stating that "his seed was in her" and discussed the possibility that Doe might be pregnant as a result of their sexual contact.

2

During the investigation of Count One in June 2014, HERREN'S computer was obtained and analyzed. Analysis discovered a search query for runaway laws in Missouri, statutes of limitations on statutory rape in Missouri, a pregnancy calculator, and a PDF document containing the ages of consent by state.

## COUNT TWO

Defendant **MARVIN D. HERREN ("HERREN")** admits the following:

Between on or about December 17, 2014, and January 24, 2015, in the Western District of Missouri and elsewhere, **HERREN**, using a facility of interstate and foreign commerce, knowingly attempted to persuade, induce, and entice an individual who had not attained the age of 18 years to engage in any sexual activity for which any person can be charged with a criminal offense, that is, the following felonies proscribed by the State of Missouri, such as, but not limited to: statutory rape or an attempt to commit statutory rape in the second degree (RSMo. Section 566.034) and statutory sodomy or an attempt to commit statutory sodomy in the second degree (RSMo. Section 566.062), all in violation of Title 18, United States Code, Section 2422(b).

In May 2014, during the investigation of the allegations by Jane Doe that are the subject of Count One, FBI Special Agent Mike Daniels assumed an undercover identity on Facebook of a female named "Jenny Breeze." "Jenny" messaged HERREN the following: *"I was lookin for friends near me and saw you were from here. Im in Tonganoxie if you know where that is."*

Defendant did not respond to that message from "Jenny" until December 17, 2014 when he messaged her: *"Hi, I just saw a message you sent to me on May 19th. You said you saw that I was from KS and told me where you are. Message me again if you want to chat."* At this time HERREN had already been made aware of the allegations of Jane Doe that are the subject of Count One as well as the FBI's investigation of those allegations.

"Jenny" messaged defendant back on January 7, 2015. The two began a Facebook conversation in which "Jenny" told HERREN she was in 8th grade the year prior and also gave defendant her email address. The two began chatting via email frequently. (SA Daniels has preserved all chat transcripts in digital format between "jenny" and HERREN.) On January 8, 2015 HERREN asked "Jenny" how old she was and she stated that she will be 15 on February 13. In that same conversation with "Jenny" HERREN asked her: *"you a virgin?"* This was the first of several conversations with "Jenny" which were sexual in nature.

In a January 8, 2015 chat session with HERREN, he encouraged "Jenny" to masturbate while chatting with him and instructed her how to do so as the two chatted. At the conclusion of the session HERREN asked "Jenny": *"love me yet?"*

During a January 12, 2015 chat session HERREN asked "Jenny" if she wanted to see something. HERREN then emailed "Jenny" a photo of his erect penis. HERREN appeared nude in the

3

photo which was apparently taken by HERREN himself.  HERREN then asked "Jenny": *"Do you want to touch it?" and "would you want to suck it?"* Later in the conversation the following dialogue occurred:

> HERREN: *When can we be together*
>
> Jenny: *but ur way away*
>
> HERREN: *I can visit*
>
> Jenny: *but its so far*
>
> HERREN: *you like me to visit?*
>
> Jenny: *that would be AWESOME*
>
> HERREN: *when and for how long?*
>
> Jenny: *up 2 u*

HERREN also later discussed what he intended to do to "Jenny" when he sees her which included sexual intercourse and oral sex.  Later during this conversation defendant then gave "Jenny" instructions on how to perform oral sex on him.

On January 20, 2015 HERREN instructed "Jenny" to locate a hotel where he might be able to stay when he comes to see her and discussed spending the night with her.  HERREN again discussed in graphic terms having sexual intercourse with "Jenny."  HERREN also asked "Jenny" in graphic terms if she would engage in oral and anal sex with him.  Later in the same conversation HERREN emailed "Jenny" an approximately 10 minute long video production of an apparent adult male and female having sexual intercourse.  The male and female were nude in the video and their genitals are visible to the viewer.

On January 23, 2015 "Jenny" emailed HERREN that she had gotten into an argument with her mother and that she wanted to leave home.  During the subsequent conversation HERREN expressed concern that "Jenny" may stay with a male friend when she leaves home. HERREN'S subsequent comments to "Jenny" indicated a concern that "Jenny" would have sex with any male friend she stays with.  HERREN also voiced his concern that "Jenny" would not be able to communicate with him from wherever she ended up staying.  HERREN voiced concern about getting in trouble if he came to see "Jenny" but eventually the following discussion ensued:

> HERREN: *you want to come here a few days?*
>
> HERREN: *nobody can know*
>
> Jenny: *well yeah*

4

| | | |
|---|---|---|
| Jenny: | *but how* | |
| HERREN: | *I can pick you up, where can i?* | |
| Jenny: | *don't just mess with me* | |
| Jenny: | *im in a bad mood* | |
| HERREN: | *you going to tell me?* | |
| Jenny: | *like what day* | |
| Jenny: | *for like a day then you get me* | |
| HERREN: | *when do you want to go back?* | |
| Jenny: | *not 4 at least a week* | |
| HERREN: | *ok* | |
| HERREN: | *I need to know where to meet you* | |
| HERREN: | *it will take me 7 hours to get to KC* | |

Later in the conversation the following dialogue occurred:

| | | |
|---|---|---|
| Jenny: | *We gonna do anything b4 we go* |
| HERREN: | *like what?* |
| HERREN: | *Do what before we go* |
| Jenny: | *thought you wanted to do stuff when met me* |
| HERREN: | *yes, we can talk about that in person* |

HERREN and "Jenny" agreed that he would meet her at a McDonald's near Liberty, Missouri later that same evening. The two chatted as defendant approached Missouri.

| | | |
|---|---|---|
| HERREN: | *Mcds near Walmart?* |
| Jenny: | *I'm so excited* |
| HERREN: | *me too* |
| Jenny: | *rite cross street* |
| HERREN: | *OK* |

5

    Jenny:  *Gonna be awesome*

    HERREN:  *Yes*

Prior to arriving in Missouri defendant told "Jenny" twice to delete her communications with him. At approximately midnight on January 23, 2015 HERREN arrived at the McDonald's at 9851 NE Barry Road in Kansas City, MO. HERREN was placed under arrest by SA Mike Daniels and TFO Virgil Garner. SA Daniels advised HERREN he was under arrest for traveling to meet a minor female. HERREN responded by stating he was there to pick up the girl because she needed a place to stay. An inventory of the vehicle revealed a Google maps printout with directions from defendant's residence in Kentucky to 9220 NE Barry Road, Kansas City, MO.

  4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the information as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charge to which he is pleading guilty.

  5. **Statutory Penalties.** The defendant understands that upon his plea of guilty to Count One of the information charging him with travel with intent to engage in illicit sexual conduct with a minor, and Count Two of the information charging him with attempted use of interstate facility to entice a minor to engage in illegal sexual activity, and upon the Court's acceptance of this plea agreement pursuant to Rule 11(c)(1)(C), the maximum penalty the Court may impose is not less than 120 months of imprisonment and not more than 300 months of imprisonment on each count to run concurrently with each other, a $250,000 fine, at least 5 years of supervised release, an order of restitution, and a $100 mandatory special assessment on each count which must be paid in full at the

time of sentencing. The defendant further understands that Count One is a Class B felony and Count Two is a Class A felony.

**6. Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

    a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission. While these Guidelines are advisory in nature, and the Court ordinarily would have the discretion to impose a sentence either less than or greater than the court-determined advisory Guidelines range, in this instance the parties agree, **pursuant to Rule 11(c)(1)(C), that the Court must impose a sentence as follows: a concurrent term of imprisonment on Count One (18 U.S.C. §§ 2423(b) & (e)) and Count Two 18 U.S.C. § 2422(b) of not less than 120 months and not more than 300 months, with a term of supervised release of not less than five years to follow**. If the court accepts this plea agreement, it must inform the defendant that sentence will be imposed in accordance with this agreement of the parties. If the court rejects this plea agreement, it must, on the record and in open court, inform the parties that the court rejects the plea agreement, advise the defendant personally that because the Court is rejecting the plea agreement the Court is not required to impose a sentence in accordance with the agreement of the parties, give the defendant an opportunity to withdraw defendant's guilty plea, and further advise the defendant that if the plea is not withdrawn, the Court may dispose of the case less favorably toward the defendant than the plea agreement contemplated;

    b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

    c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of at least 5 years; that the Court must impose a period of supervised release if a sentence of imprisonment of more than 1 year is imposed;

    d. if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to 5 years without credit for time previously spent on supervised release. However, pursuant to 18 U.S.C. § 3583(k), if the Court revokes the supervised release because the defendant committed a criminal offense under chapter 109A (sexual abuse offenses occurring on special maritime or territorial jurisdiction of the United States, in violation of 18 U.S.C. §§ 2241-2248), 110 (sexual exploitation and other abuse of children, including child pornography offenses, in violation of 18 U.S.C. §§ 2251-2260A) or 117 (transportation for illegal sexual activity and related crimes, in violation of 18 U.S.C. §§ 2421-2428) or Section 1201 (kidnapping) or 1591 (sex trafficking of children or by force, fraud, or coercion) of Title 18 of the United States Code, the Court will impose

an additional period of imprisonment of 5 years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed life, less the term of imprisonment imposed upon revocation of the defendant's first supervised release; and

  e. any sentence of imprisonment imposed by the Court will not allow for parole.

**7.** **<u>Government's Agreements</u>.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to travel with intent to engage in illicit sexual activity, sex trafficking of a minor, transfer of obscene material to a minor, and online enticement of a minor for which it has venue and which arose out of the defendant's conduct described above.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that if the

8

Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

8. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the Counts to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw defendant's plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

b. The applicable Guidelines Manual is the one that took effect on November 1, 2014;

c. The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2G1.3, which provides for a base offense level of 24 for Count One and 28 for Count Two;

d. Because these offenses involved the use of a computer, U.S.S.G. § 2G1.3(b)(3) applies to both Counts One and Two, which provides for a two (2) level enhancement to each;

e. Because Count One involved a sex act or sexual contact, U.S.S.G. § 2G1.3(b)(4) applies to Count One, which provides for a two (2) level enhancement as to Count One;

f. The Government asserts that a two (2) level enhancement applies to Count Two for obstructing or impeding the administration of justice, pursuant to U.S.S.G. § 3C1.1, as a result of defendant encouraging the investigating agent's undercover identity to delete their electronic communications. Defendant does not agree with the Government's position and reserves the right to argue that the enhancement does not apply.

g. Because the defendant engaged in a pattern of activity involving prohibited sexual conduct U.S.S.G. § 4B1.5(b) provides for a five (5) level enhancement to the combined offense level of Counts One and Two.

h. The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty plea, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

i. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

j. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

k. The defendant and the United States confirm that the agreed sentence set forth in paragraph 6(a) above is both reasonable and authorized by law, which calls for **a term of not less than 120 months and not more than 300 months imprisonment on Counts One and Two, concurrent, with a term of supervised release of not less than five years to follow**;

l. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

m. The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

11. **Effect of Non-Agreement on Guidelines Applications**. The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing**. The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement

voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b. comment on the evidence supporting the charge in the indictment;

    c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d. oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. the right to plead not guilty and to persist in a plea of not guilty;

    b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

    c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

    d. the right to confront and cross-examine the witnesses who testify against him;

    e. the right to compel or subpoena witnesses to appear on his behalf; and

    f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court may ask him questions about the offense or offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

    a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

    b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

    a. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court

13

regarding the defendant's acceptance of responsibility.

    b. The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

    c. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $100 each for Count One and Count Two by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

    d. The defendant certifies that he has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future.

**17. Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive, or to authorize any third party to request or receive, from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

**18. Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

**19. Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its

obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

20. **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys or any other party to induce him to enter his plea of guilty.

21. **Sex Offender Registration.** Defendant understands that by pleading guilty, defendant will be required to register as a sex offender upon release from prison as a condition of supervised release pursuant to 18 U.S.C. § 3583(d). Defendant also understands that, independent of supervised release, defendant will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout defendant's life. The defendant understands that defendant shall keep defendant's registration current, shall notify the state sex offender registration agency or agencies of any changes to defendant's name, place of residence, employment, or student status, or

15

other relevant information.  Defendant shall comply with requirements to periodically verify in person defendant's sex offender registration information.  Defendant understands that defendant will be subject to possible federal and state penalties for failure to comply with any such sex offender registration requirements in whatever state defendant resides following release from prison, and defendant will be subject to the registration requirements of that state.  Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon defendant's release from confinement following conviction.

As a condition of supervised release, defendant shall initially register with the state sex offender registration in *the state in which he is released*, and shall also register with the state sex offender registration agency in any state where defendant resides, is employed, works, or is a student, as directed by the Probation Officer.  The defendant shall comply with all requirements of federal and state sex offender registration laws, including the requirement to update his registration information. Defendant shall provide proof of registration to the Probation Officer within 72 hours of release from imprisonment.

22. **No Undisclosed Terms.**  The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any
written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

23. **Standard of Interpretation.**  The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and

ordinary meanings.  The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

                Tammy Dickinson
                United States Attorney

Dated:   08/11/2015         */s/ David Luna*
                David Luna
                Assistant United States Attorney

  I have consulted with my attorney and fully understand all of my rights with respect to the offense charged in the indictment.  Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines.  I have read this plea agreement and carefully reviewed every part of it with my attorney.  I understand this plea agreement and I voluntarily agree to it.

Dated:   08/11/2015         */s/ Marvin D. Herren*
                Marvin D. Herren
                Defendant

  I am defendant Marvin D. Herren's attorney.  I have fully explained to him his rights with respect to the offense charged in the indictment.  Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case.  I have carefully reviewed every part of this plea agreement with him.  To my knowledge, Marvin D. Herren's decision to enter into this plea agreement is an informed and voluntary one.

Dated:   08/11/2015         */s/ Carie Allen*
                Carie Allen
                Attorney for Defendant